H. T. Ellett, Special Judge,
delivered the opinion of the Court.
This suit was brought by Hefferman against Porter, in September, 1865. The defendant, among other things, pleaded in bar, the judgment of a tribunal known as the civil commission, created by order of the commander of the United States forces in the District of Memphis, in April, 1863, before which it is alleged the plaintiff impleaded the defendant concerning the same causes for which the present action is brought.
The plea alleges that the parties were both residents in the district of Memphis, which was under martial law and military rule, and that all civil courts were suspended therein; and that the civil commission was organized by the military commander for the said district, to hear and determine all coinplaints and suits instituted by all loyal citizens of the United States, for the collection of all debts, the enforcement of all contracts; and in other respects, to fill the place, and perform the functions of the ordinary civil courts of the country, for the time being; and that persons were ap *393 pointed to hold the said commission; their judgments and decisions to he binding and final "when approved by the said military' commander.' The commencement of proceedings before the said commission by the plaintiff against the defendant; the identity of the causes of action; the progress of the suit; and the final judgment on the merits in favor of the defendant, after full proof on both sides, and due consideration by the Court, with the approval thereof by the military commander, are all averred in the plea with technical precision.
To this plea the plaintiff demurred, and the Court overruled the demurrer; and the plaintiff refusing to reply, final judgment was entered for the defendant.
There are other pleas and demurrers in the record, but it is not necessary that we should notice them.
The defendant seeks to give effect to the judgment of this tribunal as res judicata; while the plaintiff denies to it any validity whatever, and insists that the proceeding was coram non judice, and void.
Ho objection is stated to the organization of the court, its mode of proceeding, or the forms of trial, judgment, or execution; but it is insisted that such a court is unknown to the constitution and laws of the State, or of the United States, and that it was not within the power of the military commander to create it.
The legal principles essential to the proper solution of the question involved, seem to have been fully .considered and settled in several recent adjudications by this Court.
In Rutledge vs. Fogg, 3 Cold., 554, the principles of public law applicable to the right of the conqueror *394 to establish governments in conquered territory, are thus stated: “Ordinarily the right of one belligerent nation to occupy and govern the territory of the other, while in its military possession, is one of the incidents of war, and flows directly from the conqueror. The constitution, or political institutions of the conqueror, are not, therefore, looked to for authority to establish a government for the territory of the enemy in his possession, during its military occupation, nor for the rules by which the powers of such government are regulated and limited. Such authority, and such rules, are derived directly from the laws of war, as established by the usage of the world, and confirmed by the writings of publicists and the decisions of courts.”
Having thus asserted the principle of public law that prevails in the case of international wars, the Court proceeds to state the rule in relation to territorial or civil wars, thus: “But, pending the war, the revolted territory actually occupied by the military power of the United States, is subject to the laws of the belligerent occupation. The authority of the conqueror, in such a case is, ex necessitate, paramount. His title rests on force, and' is measured by it. He may suspend the municipal laws of the State or district thus occupied if the safety or interest of the parent government demands it; or otherwise, by permission, the private and municipal laws of such conquered territory remain in force. Under this doctrine, which seems to be recognized by the laws of war, the President, in the exercise of his constitutional power as Commander-in-Chief of the army and navy, and the military officers under *395 Ms authority, may, when war actually exists, whether it be territorial or foreign, seize the enemy’s possessions, and establish a temporary government and laws for the territory so seized and occupied.”
And, in accordance with these views, it was held in that case, that the appointment of Andrew Johnson by the Secretary of War, to be Military Governor of the State of Tennessee, with power to establish all necessary offices, tribunals, etc., was legitimate and proper.
In Isbell vs. Farris, 5 Cold., 426, it was again asserted, “that, in The civil war, the sovereign government of the nation, having by military force, made conquest of, and holding in firm occupation by such force, the country witMn the scope and boundary in which the war existed, possessed the belligerent power to organize and enforce the government of the people within the country so occupied; and as a means of so organizing and enforcing government, may rightfully appoint suitable functionaries, directly by the military commander of the forces occupying the country, or through the agency of elections- held by the people themselves, pursuant to the orders of the military officer in command.” .******** “The powers exercised by the Military Governor to establish government over the people, in the manner prescribed by the proclamation of January 7, 1864, find their sanction in the public law which authorizes the sovereign belligerent in a civil war, to exercise upon the insurgent people, to some extent, the belligerent powers sanctioned by the laws of war in the case of an international war. The laws of war authorize the occu *396 pying conqueror to organize and establish government over the people of the hostile country, subdued and held in firm occupation. The government so established endures for the time the belligerent occupation continues, and ends with the restoration of peace, and the resumption of the regular municipal government of peace.”
There are other decisions in which the same principles are recognized, to which it is unnecessary to make particular reference.
These elaborate quotations are given to show that the questions as to the power of the commander of the military forces of the United States, in any district in the insurrectionary States, held in firm possession by force of arms, during such belligerent occupation, to establish such temporary government in such district, or any part thereof, as he might see proper; and to appoint and control the necessary officers and agents, and to prescribe the modes in which such governments should be administered, are not open questions in this Court.
The conclusions that have been thus announced are, moreover, in accordance with the opinions of approved writers on public law, and are sanctioned by the established usage and practice of our government, and by the decisions of its highest courts: Halleck on Int. Law, 776, et seq.; id., 830; U. S. vs. Rice, 4 Wheat, 246; Cross vs. Harrison, 16 How., 164; Leitensdorfer vs. Webb, 20 How., 176.
This right to establish government, is not at all dependent upon the right of conquest, but is treated as incident to the mere right of belligerent occupation. A nation cannot conquer its own territory, but it may *397 subdue and occupy such portions of it as are made the theater of an insurrection against its authority. The right to govern, for the time being, is necessarily embraced in the right of subjugation and occupation. Halleck says: “If a fort, town, city, harbor, island, province or particular section of country belonging to one belligerant, is forced to submit to the arms of the other, such place or territory instantly becomes a conquest, and is subject to the laws which the conqueror may impose on it; although he has not yet acquired the plenum, dominium et titile, he has the temporary right of possession and government.” p. 777.
Government of such territory, while so held in military occupation, is no less a duty than a necessity; and the right to create a government, or rather the right to govern, implies the right to determine in what manner, and through what agencies, such government is to be' conducted. The municipal laws of the place may be left in operation, or they may be suspended, and other laws put in' force. The administration of justice may be left in the hands of the ordinary officers of the law, or these may be suspended, and others appointed in their place. Civil rights and civil remedies may be suspended, and military laws and military courts and proceedings may be substituted for them; or new tribunals may be established, and new legal remedies and civil proceedings may be introduced: Halleck, 380.
The conqueror exercises, for the time being, the powers of a de fado government; and the jurisdiction and authority possessed and exercised by the tribunals *398 created by him, must depend upon his discretion. In %is respect, the act of every military commander is the act of the Commander-in-Chief, until disapproved or annulled; and is, of necessity, to be obeyed as such. Whatever the President of the United States, as Commander-in-Chief, might do, if personally present, may be done by the superior officer in command of any district, unless restrained by orders, or by the peculiar nature of the service in which he is engaged.
The establishment of legal tribunals for the adjudication and protection of civil rights, is the most favorable condition for the conquered people. There is always more or less security in a judicial body, organized according to the forms of law, for the administration of justice according to the rules that obtain in courts of judicature. There is a dignity and responsibility about such a position, that does not fail to command a decent regard to the ordinary rules of justice and of right, or to mitigate the rigor of military rule to some degree of harmony with the humane theories of modern warfare.
If, then, the power to create such civil courts exists, by the laws of war, in a place held in firm possession by a belligerent military occupation — and if their judgments and decrees are held to be binding on all parties, during the period of such occupation, as the acts of a de facto government, we are not able to see on what grounds we can refuse to them a like effect, when pleaded as res judicata, before the regular judicial tribixnals of the Siate, since the return of peace.
Our attention has been called to the action of the *399 Judge-Advocate-general of the United States, in July and October, 1863, in two cases carried up to the Secretary of War from the action of the Provost Marshal at Memphis, in undertaking to adjudicate questions of civil right. In his report on these cases, to the Secretary of War, the Judge-Advocate-general adverts to the “ civil commission” then existing in Memphis, which he pronounces to be “an anomalous and irregular tribunal, .entirely unauthorized by military law,” and earnestly advises that this, and any other court or commission of like character, be ordered by the Secretary of War to be dissolved.
The opinion of the Judge-Advocate-general is entitled to great respect; but, as it does not appear to have been adopted by the Secretary of War, or made the basis of his official action, it loses much of its weight as an authority. The reasoning on which the opinion was founded not being given, we are without the aid of the lights which guided him to his conclusions. Under these considerations, and with great deference, we feel constrained to adopt a different view of the subject. The authorities already referred to, and the reason and nature of the subject itself, we think, sustain us in this view. And, in this connection, we refer, generally, in confirmation of our opinions, to the able decision of Judge Peabody, in the case of United States vs. Reiter 4, Law Reg., N. S., 535, in which the validity of these special courts of justice organized under military authority, during the late war, and their rightful jurisdiction, not only in the most important civil matters, blit, also, in criminal cases of a *400 capital nature, are most cogently and persuasively vindicated.
The judgment of the Court below will be affirmed.